UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Mark W. King,                    :
        Petitioner,              :
                                 :
        v.                       :     File No. 1:06-CV-238
                                 :
Robert Hofmann,                  :
Commissioner, Vermont            :
Department of Corrections,       :
        Respondent.              :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 1 and 6)

Petitioner Mark W. King, a Vermont inmate proceeding

*pro se*, brings before the Court a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  In 2003,

after entering into a plea agreement with the State, King

was convicted of voluntary manslaughter and first degree

aggravated domestic assault.  He received an aggregate

sentence of 27 to 30 years.  On direct appeal the Vermont

Supreme Court affirmed King's sentence.

King's § 2254 petition contends that the evidence

did not support his sentence.  He also claims that at the

time of his plea he was not informed, by either his

attorney or the court, that waiving his right to trial

also waived his right to have aggravating sentencing

factors determined by a jury.  He further argues that the

trial court erroneously shifted the burden of proof to the defense at sentencing.

The respondent now moves to dismiss King's petition, arguing that some of his claims are unexhausted and that all are without merit.  For the reasons set forth below, I recommend that the motion to dismiss (Paper 6) be GRANTED and that King's petition (Paper 1) be DENIED.

<u>Factual Background</u>

In April 1998, King was charged with second-degree murder for causing the death of his girlfriend, Caroline Critchfield, "by throttling her and striking her in the head.  The victim, who was eight inches shorter than [King] and fifty pounds lighter, suffered extensive physical injuries; she ultimately died from numerous blows to the head."  <u>State v. King</u>, 179 Vt. 400, 401 (2006).  King maintained that Critchfield provoked him by biting down on his lip.  <u>Id.</u>

In January 2003, King entered into a plea agreement with the State.  Pursuant to the plea agreement, the State amended its information to one count of voluntary manslaughter and one count of first degree domestic assault.  King agreed to plead guilty to both counts, and

2

the State agreed that at sentencing it would not argue
for a sentence in excess of 27 to 30 years.  The
agreement stated:

> The State is capped at arguing 27 to 30 years to
> serve.  The Defendant is free to argue for less.
>
> The Defendant understands that the State will
> argue at sentencing that the Defendant's conduct
> constituted 2d Degree Murder in that he acted
> with wanton disregard for the likelihood that
> his conduct would naturally cause the death of
> Caroline Critchfield.  Defendant understands
> further that if the Court accepts the State's
> argument, Defendant may receive a minimum
> sentence warranted for 2d degree murder (up to
> 27 years).
>
> The State understands that the Defendant intends
> to argue at sentencing that his conduct
> constituted manslaughter.  The State understands
> further that if the Court accepts the
> Defendant's argument, Defendant may receive a
> sentence warranted for manslaughter.

(Paper 6, Ex. 3 at 42) (parenthetical in original).

In a separate filing entitled "Defendant's
Acknowledgment, Warranty and Waiver," King confirmed his
understanding that the State would seek a 27 to 30 year
sentence consistent with a sentence for second degree
murder.  Id. at 43.  King also agreed that if the State
proved by a preponderance of the evidence that a sentence
consistent with second degree murder was warranted, the
court could impose such a sentence.  Finally, King

3

acknowledged: "I further understand that without this agreement, the State would have been required to prove me guilty of Second Degree Murder beyond a reasonable doubt during a jury trial before such a sentence could be imposed." Id. at 44.

At the change of plea hearing, the parties explained their reasons for entering into the plea agreement. The State expressed its concern that a jury might reach a compromise verdict of manslaughter, for which the maximum sentence would be 15 years. (Paper 6, Ex. 9 at 22-23). Defense counsel informed the court that his client was entering a plea in order to avoid the risk of a life sentence on a conviction of second degree murder. Id. at 5.

King did not testify at the sentencing hearing. Instead, both parties relied on statements that he had made to emergency room personnel and police shortly after the killing. The Vermont Supreme Court summarized those statements as follows:

> In his first statement, which he made to an
> emergency room physician, defendant indicated
> that the victim had fallen asleep on the couch
> after they had returned home from a bar.
> Defendant said that when he went to check on
> her, she leaned forward and bit him; he hit her

once in response.  When defendant checked on her
again later, he could not wake her up.  He
brought the victim to the emergency room,
indicating that she had overdosed on drugs.

In his second statement, given to police shortly
after he brought the victim to the emergency
room, defendant described the victim storming
around the apartment.  He stated that when he
went into the living room, the victim approached
him as if to give him a hug, and then she moved
forward and bit him on the lip and would not let
go.  Defendant stated that he hit her once in
the face, and the punch occurred in a doorway
between the living room and the bedroom.  When
police asked defendant about bruising on the
side of the victim's head, defendant stated that
he was certain that he struck the victim only
once.  He insisted that he did not grab the
victim's throat but instead pushed her one time.
When police asked defendant why the victim's
apparent injuries exceeded the scenario that he
described, defendant stated that he had nothing
whatsoever to add.

Defendant was then advised that he was under
arrest for second-degree murder, and he declared
that he "sincerely" and "honestly" hadn't done
anything and he hadn't beaten the victim.  When
he was informed that the victim had also been
choked, defendant stated he hadn't choked her,
and that "honestly," all he had done was push
her away.  Defendant then said that he might
have pushed the victim away by pushing on her
shoulders but not her neck; he later stated that
it was possible that he had pushed her on the
neck.

Later that day, defendant gave a third statement
to police, which he initiated.  He stated that
the victim rose up and bit him on the lip and
that he "pushed, I hit, no, I didn't choke her.
No I didn't."  He added that his arm was around
her neck as he pushed her away, and the victim

was clawing at him. He stated that he punched the victim in the nose, and he then fell backwards into the bedroom. The victim got up first and came toward him, clawing at him. Defendant thought that he then grabbed her around the neck. He spun her around and he came down on top of her. He stated that her head hit the floor, probably on her side, and he indicated that he was defending himself. Defendant told police that he assumed that everything was fine and the victim had then gone to the couch. When he found her later that night, he thought that she had overdosed and choked on her own vomit.

King, 179 Vt. at 402-03. In addition to these three statements, the State presented testimony from several witnesses, including the medical examiner who had performed the autopsy on the victim. The defense also called witnesses and offered evidence. The sentencing hearing lasted three days.

The medical examiner testified that the cause of death was "severe, closed head injury due to multiple blunt trauma due to a physical assault." (Paper 6, Ex. 10 at 162). He described the victim's injuries as bruises to the forehead, neck, chest, both arms, back, thigh, hip bone and right knee. Id. at 163-64, 174-77. The victim also had "severe swelling" around both eyes, the left side of her face, her lips and chin. Id. at 165. Her nose was fractured, and she had tearing on her

nose, under her eye and inside her mouth.  Id.  The
victim had suffered a "fairly extensive hemorrhage" on
the left side of her head and abrasions matching the
pattern of a rug from the crime scene, thus indicating
that her head had been slammed into the floor.  Id. at
194-95.  The medical examiner described the victim's
bruising as being the result of "multiple" impacts,
including "at least 11 impacts to the head and maybe
more."  Id. at 184-85.  The victim also had injuries to
her neck and hyoid bone consistent with being "throttled
or strangled."  Id. at 190-91.

Detective Rick Garey of the Essex Police Department
testified that the victim's blood and torn clothing were
found in several rooms at the crime scene.  In the den,
police found two pieces of a torn camisole, a blood-
stained bra and blouse, and blood smears on the wall.
The blood on the camisole, blouse and wall was determined
to be the victim's.  Id. at 90-95, 156-57.  In the master
bedroom, the victim's blood was found on the carpet, the
bedspread, a sweatshirt, a boot and a sponge.  Id. at 98-
99, 131-32.  Her blood was also present on the living
room carpet and couch.  Id. at 104-05.  In the kitchen,

police found a pair of women's jeans, torn and blood-stained with a pair of underwear inside the leg.  Id. at 106-07.

On the third day of the hearing, the court issued oral findings prior to imposing the sentence.  Judge Brian Burgess began by noting that "at the Change of Plea Mr. King intentionally admitted to killing Ms. Critchfield and that he hit her intending to kill her." (Paper 6, Ex. 3 at 5).[1]  With respect to the evidence presented at the sentencing hearing, Judge Burgess found that King's recorded statements "kept changing . . . as he was confronted with additional evidence about the extent of the beating."  Id. at 6.  He also found that King's descriptions of the events were inconsistent with the victim's injuries and with the physical evidence found at the crime scene.  Id. at 20.  Accordingly, Judge Burgess concluded that King's statements were not credible.  King, 179 Vt. at 403.

Judge Burgess also rejected King's allegation that he was provoked by a bite to the lip.

---

[1] At the Change of Plea, King admitted that he was, in the words of Judge Burgess, "a person who intended to kill and did unlawfully kill another human being, that being Caroline Critchfield, by – by repeatedly striking her in the head."  (Paper 9 at 10).

The only evidence that the Defendant hit Ms.
Critchfield because she bit through his lip is
Defendant's statement to the E Room physician
and to the police.  It is reasonably clear that
– that Ms. Critchfield did bite through
Defendant's lip, but there is no credible
evidence to show that the bite initiated the
altercation.  The Defendant offers no
explanation at all for the scope of this beating
and the blood evidence in the three rooms
suggests there is no explanation.  Defendant's
statement that his hitting Ms. Critchfield was
precipitated by a bite from her when he is
wearing such an obvious injury is no less self-
serving and exculpatory than any of his other
demonstrated falsehoods about what happened that
night . . . .

The State proves by a preponderance of evidence
that Defendant lied about a first strike and the
logical inference is because he knew he was not
actually provoked and needed to explain his
injury and explain his otherwise patently
malicious and deadly beating of Ms. Critchfield.
For purposes of the Plea Agreement, Defendant's
intentional killing of Ms. Critchfield was not
mitigated by actual provocation and amounted to
Second Degree Murder.

(Paper 6, Ex. 3 at 21-23).  Judge Burgess then proceeded

to review aggravating factors for sentencing under 13

V.S.A. § 2303(d), and concluded that King's "extreme

beating" qualified the murder as "particularly severe,

brutal or cruel" under § 2303(d)(5).  Id. at 24-25.

Having already found that King was not entitled to

mitigation for the victim's role in her own demise, Judge

Burgess imposed the State's requested sentence of 27 to

9

30 years.  Specifically, he sentenced King to 14 to 15 years on the voluntary manslaughter count, and 13 to 15 years on the aggravated assault count.  Each count carried a maximum statutory penalty of 15 years.  The sentences were imposed consecutively.

On appeal, King argued that the evidence did not support his sentence.  The Vermont Supreme Court noted that the "heart of defendant's appeal" was his claim that the State failed to present evidence to counter his version of how the fight began.  King, 179 Vt. at 405. The appellate court affirmed the lower court's findings. "The State established that defendant repeatedly lied about what transpired, and in light of this evidence, it was reasonable for the trial court to infer that defendant also lied about how the fight began."  Id. at 407.  The court also rejected King's claim that the trial court had ignored evidence of provocation, concluding that "there was no evidence whatsoever to show provocation."  Id. at 408.

While King's appeal was pending, appellate counsel requested that his sentence be vacated in light of State v. Provost, 179 Vt. 337 (2005).  In Provost, the Vermont

Supreme Court concluded that 13 V.S.A. § 2303 was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004) "because it allowed the trial court, rather than a jury, to find facts that increased the penalty to first-degree murder beyond the statutory maximum." King, 179 Vt. at 405 (citing Provost, 179 Vt. at 346-47). The court declined to vacate on this ground, finding that Provost was inapplicable because (1) King was not sentenced beyond the statutory maximum, and (2) in his plea agreement, King consented to judicial fact-finding at sentencing.

King now brings his § 2254 petition *pro se*. The respondent concedes that the petition is timely. King asserts that he has five grounds for relief. First, he claims that the State did not sustain its burden of proving murder rather than manslaughter. Second, he argues that the trial court did not "fully apprise" him that he was waiving his right to have a jury find aggravating sentencing factors beyond a reasonable doubt. Third, he claims that his attorney's failure to object to this waiver did not operate as a waiver *per se*. Fourth,

King contends that the trial court improperly shifted the burden to the defense when determining whether he had committed second degree murder.  His fifth claim is that the trial court erred when it treated his allegedly false story about how the fight began as "proof positive to the contrary."

## Discussion

The scope of federal habeas review of state convictions is a narrow one.  See 28 U.S.C. § 2254(d). Under the § 2254 standard, the reviewing court may grant habeas relief only where the state court's adjudication of the federal claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). Habeas relief is also warranted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," or where the petitioner presents clear and convincing evidence to rebut the presumption that state court findings of fact are correct.  See 28 U.S.C. § 2254(d)(2); § 2254(e)(1).

12

A state court decision is an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). Furthermore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (citing Williams, 529 U.S. at 411).

I.   Insufficient Evidence Claim

King claims that the State did not offer sufficient proof to show that he committed murder rather than manslaughter. At the outset, it should be made clear that King was never convicted of second degree murder. Instead, pursuant to the terms of his plea agreement, the State was allowed to argue for a sentence *consistent with* second degree murder, but within the statutory confines

of the penalties for crimes to which King had admitted
guilt.  In turn, King was entitled to argue
manslaughter.[2]

King's argument has several sub-parts.  He contends
that disbelieving a witness "does not prove the
opposite."  He also argues that although the state courts
may not have believed that the bite came at the beginning
of the fight, there was no evidence to suggest that the
bite did not provoke him later in the fight.  In finding
no proof of provocation, King claims that the state
courts improperly shifted the burden to the defense.
Finally, King suggests that the courts ignored evidence
that comprised the factual basis for his guilty pleas.

Most of King's first claim is targeted at the
inferences made by the trial court.  Under Vermont law, a
fact-finder reviewing circumstantial evidence "may draw
rational inferences to determine whether disputed
ultimate facts occurred."  State v. Durenleau, 163 Vt. 8,

---

[2]  Under Vermont law, second degree murder is the unlawful killing of
another person with "an intention to kill, an intention to do great bodily
harm, or a wanton disregard of the likelihood that one's behavior may
naturally cause death or great bodily harm."  State v. Hatcher, 167 Vt.
338, 344 (1997).  "Voluntary manslaughter has the same intent element as
murder but is distinguished by the presence of 'extenuating circumstances
that may negate willfulness, such as sudden passion or provocation that
would cause a reasonable person to lose control.'"  King, 179 Vt. at 548
(quoting State v. Blish, 172 Vt. 265, 270 (2001)).

12 (1994).  Here, the Vermont Supreme Court found that it was reasonable for the trial court to infer, given King's repeated lies about what had transpired, that King also lied about how the fight began.  <u>King</u>, 179 Vt. at 407.  "[D]efendant's statements to police were the only evidence of provocation.  The State produced evidence to discredit defendant's version of events, and the trial court acted within its discretion in rejecting defendant's version of how the fight began and finding an absence of provocation."  <u>Id.</u> ¶ 19.

The federal habeas statute requires a reviewing court to presume that state court findings of fact are correct absent clear and convincing evidence to the contrary.  <u>See</u> 28 U.S.C. § 2254(d)(2); § 2254(e)(1).  Here, King has offered no such clear and convincing evidence to counter the state courts' conclusions.  Instead, he argues that finding his statements not credible does not make the opposite of those statements true.  As the Vermont Supreme Court properly stated, King's argument "mischaracterizes the issue before the trial court."  <u>King</u>, 179 Vt. at 407.  The only proof of provocation came from King's recorded statements.  The

State offered evidence to discredit those statements, and the trial court found the statements not credible.

A federal court reviewing a habeas petition may not revisit the state fact-finder's credibility determinations.  See Jackson v. Conway, 448 F. Supp. 2d 484, 451 (W.D.N.Y. 2006) (citing Marshall v. Lonberger, 459 U.S. 422, 432-35 (1983)).  Accepting the trial court's conclusion that King's version of events was not credible, there was no evidence of provocation at any point in the fight.  With no evidence of provocation, King lacked support for his manslaughter argument, and the trial court did not need to consider provocation as a mitigating factor under 13 V.S.A. § 2303.  "The State was not obligated to provide additional affirmative evidence to sustain its burden."  King, 179 Vt. at 406-07; see also State v. Warner, 151 Vt. 469, 472 (1989) (State not required to exclude every hypothesis of innocence when proving a case with circumstantial evidence).

With respect to King's claim that evidence offered at his change of plea was ignored, "[i]t is difficult to discern . . . how the factual basis for his guilty pleas assists his arguments . . . ."  King, 179 Vt. at 408.

16

King claims that his accounts of "how Ms. Critchfield approached him and how she bit off his lip were consistent." (Paper 2 at 16). He also argues that his story was corroborated by physical evidence. <u>Id.</u> These claims each pertain to credibility, which this Court is not permitted to revisit. Furthermore, the undisputed fact that King had a cut on his lip "does not undermine the court's conclusion regarding the absence of provocation." <u>Id.</u> Accordingly, I recommend that King's petition for relief based upon insufficient evidence at sentencing be DENIED.

II.   <u>Judicial Fact-Finding at Sentencing</u>

King next claims that he was never informed at the change of plea that he was waiving his constitutional right, as determined by the U.S. Supreme Court in <u>Apprendi</u>, to have a jury find aggravating sentencing factors beyond a reasonable doubt. The Vermont Supreme Court found, indirectly, that <u>Apprendi</u> did not apply in this case because (1) King's sentence was not above the statutory maximum and (2) King consented to judicial fact-finding at sentencing.

17

In <u>Apprendi</u>, the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. In <u>Blakely</u>, the Supreme Court clarified this rule by stating that

> the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

542 U.S. at 303 (citations omitted) (emphasis in original).

On direct appeal, King urged the Vermont Supreme Court to apply the <u>Apprendi</u> rule as it had in <u>State v. Provost</u>, 179 Vt. 337 (2005).  The <u>Provost</u> decision held that Vermont's law setting penalties for first and second degree murder, codified at 13 V.S.A. § 2303, was unconstitutional because it required the sentencing court to weigh aggravating factors that could lead to a sentence beyond the statutory maximum.  179 Vt. at 347-48.  In his appeal, King argued that <u>Provost</u> required him

to be re-sentenced.  The Vermont Supreme Court disagreed.
The court first noted that King was never convicted of
second degree murder, and thus was not sentenced under §
2303.  <u>King</u>, 179 Vt. at 405.  The court also found that
<u>Apprendi</u> was inapplicable because King's sentence did not
exceed the statutory maximums for the crimes of which he
was convicted.  <u>Id.</u>  Finally, the Vermont Supreme Court
found that "defendant expressly agreed to have the trial
court serve as finder of fact to determine the
appropriate sentence."  <u>Id.</u>

On this last point, the plea agreement plainly
contemplated that each side would make certain arguments
at sentencing, and that the trial court would find facts
and reach a sentence based upon those facts.  (Paper 6,
Ex. 3 at 41-42).  This understanding was again
memorialized in the Defendant's Acknowledgment, Warranty
and Waiver, which clearly set forth King's understanding
that "without this agreement, the State would have been
required to prove me guilty of Second Degree Murder
beyond a reasonable doubt during a jury trial . . . ."
<u>Id.</u> at 44.

At the change of plea hearing, judicial fact-finding

at sentencing was discussed repeatedly.  As part of the
Rule 11 colloquy, the trial court made sure that King was
aware of the right he was waiving.

COURT:    Okay.  Now, the – the sort of unusual
          thing about this, Mr. King, since the
          State is going to be basically arguing
          that you committed Murder in the
          Second Degree and you're going to be
          arguing that you committed
          Manslaughter that ultimately the Court
          is going to have to make a decision
          about that, but instead of a jury
          deciding or even the Court deciding
          those facts beyond a reasonable doubt
          the Court would just be deciding those
          facts by a preponderance of evidence,
          that is the – either the State or
          [defense counsel] would have to tip
          the scales just a little bit for the
          Court to make the decision one way or
          the other.  You understand that?

KING:     Yes, Your Honor.

COURT:    So the State has a much less – a much
          lesser burden here than it would have
          if you actually took this matter to
          trial to see if they could actually
          prove in front of a jury that you
          committed Murder in the Second Degree.
          You understand that?

KING:     Yes, Your Honor.

(Paper 6, Ex. 9 at 12).

     In Blakely, the Supreme Court explained that "the
State is free to seek judicial sentence enhancements so
long as the defendant either stipulates to the relevant

20

facts or consents to judicial factfinding."  542 U.S. at 310.  Here, the Vermont Supreme Court found that no rights were violated because King had clearly consented to judicial fact-finding.  In light of <u>Blakely</u>'s direct reference to such a stipulation, the Vermont Supreme Court did not unreasonably apply the facts to clearly established law when it determined King had waived his right to challenge the trial court's sentencing procedure.  <u>See</u> <u>King</u>, 179 Vt. at 405.

King's claim in his habeas petition presents a somewhat different argument than the one presented on direct appeal.[3]  At the Vermont Supreme Court, King argued that <u>Provost</u> required vacating the sentence imposed under § 2303.  In his current petition, King claims that the trial court failed to adequately inform him of his right to have a jury find, beyond a reasonable doubt, the facts to be used at sentencing.  As discussed above, however, his claim runs counter to the plea documents he signed and his statements at the change of plea hearing.

King's sentencing hinged upon the State's argument

---

[3]  Unexhausted claims may be dismissed in a § 2254 proceeding if they are without merit.  28 U.S.C. § 2254(b)(2).

for second degree murder and the defense's argument for
manslaughter.  This "unusual" arrangement meant that the
sentencing process would be much like a bench trial, and
that the trial court's findings of fact and conclusions
of law would determine the sentence, limited only by the
cap in the plea agreement.  <u>King</u>, 179 Vt. at 404.  The
documents and change of plea transcript make clear that
King was aware of this arrangement, and that he knowingly
waived his right to have a jury determine these questions
beyond a reasonable doubt.  His argument that he was
unaware of his rights is, therefore, without merit.[4]

III.  <u>Remaining Claims</u>

King's remaining claims merely reiterate elements of
his first argument.  These claims assert (1) that the
trial court improperly shifted the burden of proof at
sentencing on the provocation issue, and (2) that the
trial court made erroneous findings of fact.  As
discussed above, there was no improper burden shifting as
the State carried its burden by discrediting King's
version of the fight.  With respect to findings of fact,

---

[4]  Because King clearly waived his right to have a jury determine his
sentencing factors, the Court need not reach his claim that defense
counsel's silence did not amount to a *per se* waiver of rights.

this Court will not review credibility issues.
Furthermore, and for reasons set forth above, King has
failed to offer clear and convincing evidence to rebut
the presumption of correctness in the state courts'
findings.  I therefore recommend that King's petition be
DENIED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that
the respondent's motion to dismiss (Paper 6) be GRANTED
and that King's petition for writ of habeas corpus (Paper
1) be DENIED.

Dated at Burlington, in the District of Vermont,
this <u>17</u>th day of October, 2007.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).